**David Lee DELPH, Petitioner,**

v.

**A. E. SLAYTON, Jr., Superintendent, Virginia State Penitentiary, Respondent.**

**Civ. A. No. 72–C–17–H.**

United States District Court, W. D. Virginia, Harrisonburg Division.

Feb. 14, 1973.

———◆———

Burnett Miller, III, Asst. Atty. Gen., Richmond, Va., counsel for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This case is on remand from the Fourth Circuit, 471 F.2d 648, with instructions to reconsider one of petitioner's allegations in light of the recent Supreme Court decision of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L. Ed.2d 101 (1972) which was decided after this court handed down its first decision in this case. For a complete statement of the facts in this case the court refers to its first opinion in this case, Delph v. Slayton, 343 F.Supp. 449 (W. D.Va.1972). The question on remand is whether or not the petitioner was denied his right to a speedy trial when considered in light of the principles established by *Barker*.

To recount briefly the chain of events in this case the petitioner was indicted in September, 1965 for attempted murder and robbery. Although his first trial was scheduled for December 20, 1965, it was continued while he was confined at the state hospital to determine his mental competency to stand trial. He was returned from the hospital in March, 1966, and his trial was set for June 23, 1966. Because the prosecution's main witness had been located just a few days prior to this date, the indictments against petitioner were nolle prossed, and he was released into the custody of federal authorities.

This court discussed in detail whether or not Virginia's nolle prosequi procedure was unconstitutional when considered in light of the Supreme Court's decision in Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1, (1966), in which North Carolina's nolle prosequi procedure was declared to be unconstitutional. This court held that Virginia's procedure did not violate the Sixth Amendment guarantee to a speedy trial. The Fourth Circuit did not disagree with this court's finding.

The petitioner was reindicted in January, 1968, and in February he notified his defense counsel that he wished a speedy trial. In May, 1968 the state trial court ordered the Commonwealth's attorney to determine what the proper procedures were to obtain custody of petitioner, and in November, 1968 the court signed the requisite papers which would enable the petitioner to be released from his federal prison for trial in Virginia. The petitioner was returned to Virginia on April 10, 1969. Trials were held on May 29, 1969 and June 5, 1969. The sole question before this court is whether the seventeen month delay between his January, 1968 indictments and his trials denied him his right to a speedy trial.

In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) the defendant and another individual were indicted in Kentucky on September 15,

1958 for murder. Because the Commonwealth believed that its case against the defendant's accomplice, Manning, in the murder was stronger, it decided not to try the defendant until his accomplice had been convicted. Manning was not convicted of both murders until December, 1962. During this entire period the Commonwealth deliberately requested continuances in Barker's trial, so it could obtain a conviction against Manning and use his testimony to convict Barker.

After his initial arrest, Barker spent ten months in jail, after which he was released on bond. In February, 1963 his trial was set for March, but on the day of the trial, it was rescheduled to June 19, 1963 because of the illness of the key witness. Trial was continued until October 9, 1963 at which time it was held.

The court discussed the social aspects of the Sixth Amendment right to a speedy trial. It noted that two approaches have been proposed or taken to safeguard this right. One approach suggested by many people was that a definite time period be set within which trial must be held. Second the court discussed the use of the demand-waive doctrine which provides that an individual waives his right to a speedy trial up until the point that he actually demands a trial. The court held that with respect to this Sixth Amendment right silence did not constitute an absolute waiver of the right, but was only one factor to consider in determining whether or not the individual's right to a speedy trial had been violated. In the end the court rejected both the fixed time period approach and the demand-waiver doctrine as the sole criteria to make the necessary determination.

The court then set forth four factors to consider when a court is determining whether or not the individual's right to a speedy trial has been violated. These four factors are: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) prejudice to the defendant.

With respect to the first criteria the court stated:

" . . . because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the particular circumstances of the case." *Barker* at 530, 92 S.Ct. at 2192.

Concerning reasons for the delay, the court made the following comment:

[h]ere, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay. (*Barker* at 531, 92 S.Ct. at 2192.)

The court stated that "[t]he defendant's assertion of his speedy trial right, . . ., is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker* at 531, 92 S.Ct. at 2192.

The court then identified three interests connected with the idea of prejudice to a defendant: " . . . to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) [which is the most important] to limit the possibility that the defense will be impaired." *Barker* at 532, 92 S.Ct. at 2193. After analyzing the case before it, in light of these four factors, the court concluded that Barker's right to a speedy trial had not been violated.

In the present case there is a delay of seventeen months between the petitioner's indictment and his first trial. While not unduly long, it is sufficiently long to prompt further inquiry by this court into the details and nature of the delay.

Approximately fifteen of the seventeen months occurred as a result of Commonwealth efforts to secure the presence of the accused from his Missouri federal prison. With regard to these efforts the court notes that there is evidence which indicates that the Commonwealth was slightly negligent in procuring the presence of petitioner.

Of the total fifteen months, approximately five months were unquestionably justified. These five months occurred during the time the petitioner was being transferred to Virginia after all proper papers had been signed. The Commonwealth is not responsible for the speed with which federal authorities transfer prisoners. It also appears from the records that the Commonwealth was unfamiliar with the procedure used to obtain state custody of federal prisoners. Therefore this court believes that a reasonable time to locate the prisoner, determine the proper procedures to follow, and prepare the necessary papers should be no longer than four months. Therefore there is a six month period for which no valid excuse exists. The court holds the Commonwealth negligent for this six month delay. Nevertheless this unexcused delay is in the words of the Court a "neutral" reason and as such should be weighed less heavily against the Commonwealth, than a deliberate attempt to curtail the individual's right to a speedy trial.

When viewed with respect to the court's fourth criterion, prejudice, this court finds that the delay of the Commonwealth in procuring the petitioner was non-prejudicial and in no way affected his ability to defend himself. In the first brief to this court by petitioner's counsel, it was not argued that this delay prejudiced petitioner in his ability to defend himself. In neither trial did the defense call any witnesses or claim that it was unable to call any witnesses because of the delay.

In its first opinion this court discussed the question of waiver with respect to the defendant's request for a speedy trial. While the court still adheres to its original opinion in this matter, it appears that the present case may be disposed of without reference to the waiver theory.

The remaining two points discussed by the court, undue pretrial incarceration and minimization of anxiety, are inapplicable to the present case.

Failing to find the existence of any prejudicial effect caused by the delay, and finding that while part of the delay was caused by negligence, a greater part of it was justifiable as previously discussed, and believing that the seventeen month period did not by itself constitute a denial of a speedy trial, this court holds that petitioner's Sixth Amendment right to a speedy trial was not violated, and his petition is hereby dismissed, and it is so Adjudged and Ordered.